UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
VIJU CHACKO,                                          :

                        Plaintiff,           :       OPINION AND ORDER

                    -v.-                  :
                                                       19 Civ. 8051 (GWG)
COSTCO WHOLESALE CORP.,                               :

                        Defendant.           :
---------------------------------------------------------------x
COSTCO WHOLESALE CORP.,                               :

                       Third-Party Plaintiff, :

                    -v.-                  :

CURTI'S LANDSCAPING, INC.,                            :

                     Third-Party Defendant. :
---------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Third-party defendant Curti's Landscaping, Inc. ("Curti's") has moved for summary judgment dismissing claims brought by defendant and third-party plaintiff Costco Wholesale Corporation ("Costco") for contractual indemnity, common-law indemnity, common-law contribution, and breach of contract.[1] For the reasons stated below, Curti's' motion for summary judgment is granted.

---

[1] See Third-Party Defendant Curti's Landscaping, Inc.'s Notice of Motion for Summary Judgment, filed June 4, 2021 (Docket # 53) ("Notice of Mot."); Declaration of Cristen R. Sommers in Support, filed June 4, 2021 (Docket # 54) ("Sommers Decl."); Curti's Rule 56.1 Statement, filed June 4, 2021 (Docket # 55) ("Curti's 56.1 Statement"); Memorandum of Law in Support, filed June 4, 2021 (Docket # 56) ("Curti's Mem."); Memorandum of Law in Opposition, filed June 25, 2021 (Docket # 59) ("Costco Mem."); Counter-Statement of Facts Pursuant to Rule 56.1, filed June 25, 2021 (Docket # 60) ("Costco 56.1 Statement"); Reply Affirmation of Cristen R. Sommers in Support, filed July 7, 2021 (Docket # 61); Reply

I. BACKGROUND

  A. Facts

Unless otherwise stated, the following facts are not in dispute or are taken in the light most favorable to Costco, the non-moving party.

    1. The Accident

This suit arises from a slip-and-fall accident that occurred on December 17, 2018.  See Notice of Removal, Exhibit A, Summons and Verified Complaint, filed August 28, 2019 (Docket # 1-1) ("Comp.").  The plaintiff, Viju Chacko, was injured while walking through the parking lot of Costco's Nanuet, New York store.  See Sommers Decl., Exhibit 7, at 21:16-21, 26:3-8, 27:6-20 ("Chacko Tr.").  According to Chacko, she fell while walking on a "pathway" that ran through a landscaped bed in a parking lot island.  See id.

This so-called "pathway" was allegedly created by pedestrians repeatedly walking through the landscaped bed, which prevented plants from growing in that area.  See Sommers Decl., Exhibit 9, at 64:4-14 ("Beaudry Tr.").  The "pathway" was not a designated area for customers to walk, although no prohibitory signs, warnings, or other deterrents were posted on or around it.  See Sommers Decl., Exhibit 8, at 37:19-21, 39:7-25, 40:2-23, 64:9-13 ("Callahan Tr.").  Chacko claims to have used the "pathway" regularly before the accident without incident, including during the week prior to her fall.  Chacko Tr. 27:2-11.

The parties dispute whether Costco knew its customers used these pathways.  Costco's general manager testified that he knew "people walk everywhere" and that he was "sure" he had seen someone walk over such pathways.  He also testified, however, that he could not

---

Memorandum of Law in Support, filed July 7, 2021 (Docket # 62) ("Curti's Reply"); Letter from Cristen R. Sommers re: Full Submission of Motion Papers, filed July 9, 2021 (Docket # 63).

specifically recall such an occurrence. See Callahan Tr. 36:12-15, 37:2-12, 54:16-19, 60:11-17, 65:14-22, 66:2, 68:7-16. For its part, Curti's knew pedestrians used the landscaped beds "as cut throughs," Beaudry Tr. 71:16-24, but Curti's never raised the issue with Costco, see id. 78:10-25, 79:1-9, and Costco never asked. See Callahan Tr. 42:3-10.

As Chacko walked through the landscaped bed, she tripped on what she identified as a "root," see Chacko Tr. 28:4-13, which may have been the base of a juniper plant. See Beaudry Tr. 37:1-8, 66:13-16. Chacko testified she fractured her ankle in the fall. Chacko Tr. 37:16-19.

    2. The 2018 Landscaping Contract

Before the accident occurred, on January 1, 2018, Curti's entered into a contract with Costco to provide landscaping and snow removal services at Costco's Nanuet store. See Sommers Decl., Exhibit 10 ("Service Agreement"); id., Exhibit 11 ("Snow Maintenance Contract") (collectively, "the 2018 Contract"). The provisions included the following:

> 1. Summary of Specifications:
> 1.1. All lawn, trees shrubs and ground cover to be neatly maintained and in a manner healthy to same. . . .
> 2. Lawns/Turf Areas: Lawns/turf areas will be mowed on a scheduled basis so as to maintain a neat appearance and to promote healthy growth . . . .
> 4. Shrubs and Ground Cover: Pruning, thinning, and trimming will be done on a regular basis so as to maintain a neat appearance and to achieve the original design concept. . . .
> 5. Beds: If flower and planting beds are subject to this Agreement, such beds will be kept free of weeds, moss, leaves, and trash. Beds will be raked smooth so as to maintain a neat appearance . . . .
> 10. Inspection: Upon request, a monthly inspection of the grounds covered by this Agreement will be made by Costco and [Curti's].

Service Agreement, at 7-8.

In a separate part of the 2018 Contract, Curti's further agreed:

> Evergreen shrubs shall be pruned and trimmed to remove winter kill and damage from wind or ice and will be performed, as necessary, to develop their natural form and maintain a neat appearance.

> Weather conditions permitting, [Curti's] shall perform a Fall Clean Up [in] October/November, and keep pace with defoliation and continue to perform the following until all foliage has dropped from the trees:
> - Clean and rake out beds and lawn areas.
> - Rake leaves, branches, and debris and removed [sic].. . . .
> - Beds, walkways, and lawn areas will be edged. Dirt and debris generated by edging operations shall be removed and areas swept clean.
> - Established bed areas will be weeded and cleaned out.
> - Leaves, branches, and other debris will be removed from turf areas and landscape beds . . . .
>
> Existing mulched areas will be replenished twice per year . . . . Mulch shall be installed at a depth of approximately 2-3 [inches].

Snow Maintenance Contract, at 1-2.

The contract also included an indemnification clause, which provides in relevant part:

> [Curti's] shall indemnify, defend and hold Costco . . . harmless from and against all claims (including claims of Costco against Providers), actions, liability, damages, losses, fines, penalties, costs and expenses (including reasonable attorneys' and experts' fees) arising out of any of the following, provided that [Curti's] obligation to defend shall apply only to claims or actions brought by a third party against Costco:
>
> > 8.2  any actual or alleged . . . injury to any person . . . claimed to result in whole or in part, from the Services provided under this Agreement; [or] . . .
> > 8.5  any breach or default by [Curti's] under this Agreement.

Service Agreement, at 2-3.

By its terms, the 2018 Contract prohibits oral modifications and provides that it is the "final and complete agreement" between the parties. Id. at 5. Neither party contends that the 2018 Contract was modified, and uncontradicted testimony reflects that whenever Costco asked Curti's to perform work outside the bounds of the 2018 Contract, a separate agreement was prepared and executed by the parties. See Beaudry Tr. 15:12-19, 25:5-23, 40:9-18; see also Curti's 56.1 Statement ¶ 16 ("[O]nce or twice a year COSTCO performed an internal audit and would walk the property with CURTI'S and request additional work outside the bounds of the

contract be performed.  If work outside the contract was requested, estimates and separate agreements would be prepared."); Costco 56.1 Statement ¶ 16 ("COSTCO does not dispute that [i]f work outside the contract was requested, estimates and separate agreements would be prepared.").

In 2018, Curti's visited the Nanuet Costco once a week during the "maintenance season," which ran from April to November.  Beaudry Tr. 19:4-14, 27:13-24.  Each week, Curti's would cut grass, trim trees, and remove debris.  See id. at 23:10-13 ("[T]he weekly services were part of the contract so every week the place would be cut and blown down and tree trimmed . . . .").  Twice during the maintenance season, Curti's would prune the plants in the landscaped beds.  See id. at 27:13-25, 28:1-22.  Curti's senior operations manager defined pruning as "the shaping and cutting back of [a] new growth."  Id. at 32:7-8.  Curti's also thinned and trimmed shrubs and ground cover in the landscaped beds.  Id. at 18:9-15, 30:10-25, 31:1-24, 32:5-24, 33:6-11, 38:8-15.  "Thinning" refers to cutting excessive growth from a dense plant to ensure that sufficient oxygen can reach the plant foliage.  Id. at 32:9-13.  "Trimming," like pruning, refers to "the shaping of the plant material."  Id. at 32:14-16.  According to Curti's' uncontradicted testimony, neither pruning, nor thinning, nor trimming relate to plant roots.  See id. at 32:17-20.  In fact, Curti's never performed any work "with regard to plant roots" at the Nanuet Costco.  See id. at 29:3-18.

With respect to the "pathway," Curti's mulched and cleaned the area in the spring and fall.  See id. at 38:16-24; Snow Maintenance Contract, at 2.  Curti's did not plant new ground cover or shrubs on the "pathway," nor did it remove any juniper from the landscaped bed where Chacko fell.  See Beaudry Tr. 39:18-25, 40:1-8, 61:7-25, 62:1-7, 68:10-19, 73:16-21; Curti's 56.1 Statement ¶ 22; Costco 56.1 Statement ¶ 22.  Curti's did not prune the sides of the juniper

plants located adjacent to the "pathway" in a manner that would facilitate the "pathway's" existence. See Beaudry Tr. 63:16-25, 64:1-2. Instead, the juniper plants surrounding the "pathway" were maintained in their "natural shape." Id.

Costco performs regular inspections of its parking lot. See Callahan Tr. 19:4-9. During these inspections, Costco looks for tripping hazards and other dangerous conditions such as "snow, ice, . . . pot holes, cracked curbs, corrals, [or] cart rails," and even downed trees. Id. at 19:19-25, 20:1-25, 21:2-3. Costco does not inspect the landscaped parking lot islands for "tripping hazards." Id. at 64:2-13. Under the 2018 Contract, Costco also performed internal audits during which Costco would walk the property with a Curti's representative. See Beaudry Tr. 24:18-21, 25:5-9. During some audits, Costco would request that Curti's perform additional work outside the contract, such as additional mulching or garbage pick-up. See id. at 25:5-25, 26:1-25, 27:1-9, 76:16-25, 77:1-24. On these occasions, a separate contract would be executed for the additional work. See id. 15:12-19, 25:5-23, 40:9-18; Curti's 56.1 Statement ¶ 16; Costco 56.1 Statement ¶ 16. Costco admits that it never spoke with Curti's about changing the landscaping in the area where Chacko's accident occurred. Costco 56.1 Statement ¶ 22.

Curti's does not independently inspect the landscaped beds to identify whether there is work beyond the scope of the contract that may be required, nor does it inspect the landscaped beds for hazardous conditions. See Beaudry Tr. 23:20-25, 24:1, 39:1-17.

### 3. The 2018 Contract's Insurance Provision

In the 2018 Contract, Curti's agreed to "cause [Costco] to be named and maintained as an additional insured on its insurance policy[.]" Service Agreement, at 3. Under this provision, Curti's was required to provide Costco with "one or more certifications of insurance naming [Costco] as an additional insured and documenting that the insurance required . . . has been

obtained." Id. The contract described the insurance coverage Curti's was required to obtain. See id. at 3-4 (requirements for commercial general liability, workers compensation insurance, automobile liability insurance, and waiver of subrogation).

In support of its motion for summary judgment, Curti's produced a certificate of insurance listing Costco as an "additional insured." Sommers Decl., Exhibit 14 ("Certificate of Liability Insurance").

  B. Procedural History

On April 30, 2019, Chacko sued Costco in New York State Supreme Court for negligence. See Comp. On August 28, 2019, Costco removed the case to federal court, invoking diversity jurisdiction. Notice of Removal, filed August 28, 2019 (Docket # 1). On December 30, 2019, Costco impleaded Curti's, asserting contractual and common-law indemnification claims, a common-law contribution claim, and a breach of contract claim. Third-Party Complaint, filed December 30, 2019 (Docket # 17) ("Third-Party Comp."). Curti's now seeks summary judgment on each of Costco's claims. Notice of Mot.

II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment" when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); accord

Morales v. Quintel Ent., Inc., 249 F.3d 115, 121 (2d Cir. 2001) ("[A]ll reasonable inferences must be drawn against the party whose motion is under consideration.").

Once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (internal quotation omitted), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). See Fed. R. Civ. P. 56(c), (e). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (punctuation and quotation omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48); accord El-Nahal v. Yassky, 835 F.3d 248, 252, 256 (2d Cir. 2016).

III. DISCUSSION

Curti's seeks summary judgment on all four of Costco's claims: (1) contractual indemnification; (2) common-law indemnification; (3) common-law contribution; and (4) breach of contract. See Curti's Mem. at 7, 11, 15. We discuss each next.

A. Contractual Indemnification Claim

"The right to contractual indemnification depends upon the specific language of the contract." DiBuono v. Abbey, LLC, 95 A.D.3d 1062, 1066 (2d Dep't 2012) (quoting George v. Marshalls of MA, Inc., 61 A.D.3d 925, 930 (2d Dep't 2009)) (citing Bellefleur v. Newark Beth Israel Med. Ctr., 66 A.D.3d 807, 809 (2d Dep't 2009); Canela v. TLH 140 Perry St., LLC, 47 A.D.3d 743, 744 (2d Dep't 2008)). A "promise to indemnify should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding circumstances." George, 61 A.D.3d at 930 (citing Hooper Assoc. v. AGS Computers, 74 N.Y.2d 487, 491-92 (1989)). "When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." Hooper Assoc., 74 N.Y.2d at 491 (citing Levine v. Shell Oil Co., 28 N.Y.2d 205, 211 (1971); Kurek v. Port Chester Hous. Auth., 18 N.Y.2d 450, 456 (1966)).

In the 2018 Contract, Curti's agreed to indemnify Costco for all claims "arising out of" (1) "any actual or alleged . . . injury to any person . . . claimed to result in whole or in part, from the Services provided under this Agreement"; or (2) "any breach or default by [Curti's] under this Agreement." Service Agreement, at 2-3. Costco asserts that Curti's breached the 2018 Contract and that this breach resulted in plaintiff's alleged injuries, thereby triggering the indemnity obligation. See Costco Mem. at 7-9.

In its effort to avoid summary judgment, Costco argues that "there is an issue of fact as to whether Curti's[]" breached the 2018 Contract. Id. at 8. Costco asserts broadly that summary judgment cannot be granted because "[w]hether there has been a breach of contract is a question of fact that cannot properly be resolved in the context of a motion for summary judgment." Id. at 7 (citing United States for Use of N. Maltese and Sons, Inc. v. Juno Const. Corp., 759 F.2d 253,

255 (2d Cir. 1985) ("It is hardly necessary to cite authority for the proposition that whether there has been a breach of contract is a question of fact.")).  The quoted statement, however, cannot be read in the expansive manner that Costco suggests.  In fact, the Second Circuit has routinely held that summary judgment may be granted in a breach of contract action where a contractual term is unambiguous or where extrinsic evidence allows for only one reasonable interpretation of a contract.  See, e.g., Hanson v. McCaw Cellular Comms., Inc., 77 F.3d 663, 667 (2d Cir. 1996); Compagnie Financiere de CUC et de L'Union Europeenne v. Merril Lynch, Pierce, Fenner & Smith, Inc., 232 F.3d 153, 158 (2d Cir. 2000).  Obviously, in reaching any such decision, a court must accept as true the admissible evidence offered by the non-movant.  See Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 255.

Costco also reverses the burden of proof by arguing that Curti's' motion should be denied because Curti's failed to offer "argument or evidence that it complied with" its contractual duties, Costco Mem. at 8, or because it "failed to affirmatively establish the absence of evidence that the alleged accident resulted from services provided by [Curti's] under the contract," id. at 9.  In fact, it is Costco — not Curti's — that bears the burden on this motion of marshalling evidence that would allow a reasonable jury to find that the contract had been breached.  See, e.g., Raymond v. Marks, 1997 WL 34984, at *1 (2d Cir. June 24, 1997) ("Under New York law, the party asserting a breach of contract claim has the burden of proving the material allegations in the complaint by a fair preponderance of the evidence." (citation omitted)); accord Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011); Alito v. Connolly, 2021 WL 4803582, at *39 (S.D.N.Y. Oct. 13, 2021).
.

Costco asserts that Curti's breached the contract by "failing to address" the root that plaintiff allegedly tripped on. Costco Mem. at 7. In other words, Costco is asserting that by leaving the root or plant base as it was (that is, exposed), Curti's failed to comply with the 2018 Contract.

To determine whether a reasonable jury could find that Curti's failed to comply with the 2018 Contract, we must first of course identify which contractual provision was allegedly breached. The portion of Costco's brief asserting the contractual indemnification argument, however, does not actually quote any specific contractual provision, let alone identify a provision by paragraph or section number. See Costco Mem. at 7-9. It does, however, state several times that Curti's had a duty to "neatly maintain" shrubs and ground cover. Id. at 8. And this language does appear in one provision in the contract, which provides that "All lawn, trees shrubs and ground cover to be neatly maintained and in a manner healthy to same." Service Agreement, Exhibit A, § 1-1.1. We thus construe Costco's brief as arguing that Curti's breached § 1-1.1 of the 2018 Contract.

As Costco describes it, Chacko's claim in this case is that she tripped on the "root" of a shrub on a "pathway" through a landscaped bed. Costco Mem. at 2 (citing Chacko Tr. 26:3-28:13). Costco notes that the "root" may have been the base of a juniper plant, see id., an assertion that is supported by Curti's deposition testimony, see Beaudry Tr. 37:1-8, 66:13-16, and that we accept for the purposes of summary judgment. Thus, the issue that must be resolved is whether a reasonable jury could find based on any evidence marshaled by Costco that leaving a juniper plant root or base exposed violated Curti's' duty to "neatly maintain[]" the juniper plant that was the source of Chacko's injury.

On the issue of how to construe the phrase "neatly maintained," New York law provides that "the words and phrases used by the parties must, as in all cases involving contract interpretation, be given their plain meaning." Ellington v. EMI Music, Inc., 24 N.Y.3d 239, 244 (2014) (quoting Brooke Group v. JCH Syndicate 488, 87 N.Y.2d 530, 534 (1996)). Additionally, a contract must "be read as a whole" because "[t]he meaning of a writing may be distorted where undue force is given to single words or phrases." Westmoreland Coal Co. v. Entech, Inc., 100 N.Y.2d 352, 358 (2003) (internal quotation omitted). Thus, "[s]ingle clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part." Arrowgrass Master Fund Ltd. v. Bank of N.Y. Mellon, 965 N.Y.S.2d 473, 475 (1st Dep't 2013) (internal quotation omitted).

The use of the adjective "neat" in § 1-1.1 by itself suggests that the obligation intended by the parties was to require Curti's to maintain an aesthetically pleasing environment, not a safe one. This reading is supported by numerous other uses of similar language in the 2018 Contract. The provision entitled "Shrubs and Ground Cover" requires Curti's to regularly prune, thin, and trim shrubs and ground cover "to maintain a neat appearance." Service Agreement, at 8. Curti's is also required to prune, thin, and trim evergreen shrubs in a manner that "develop[s] their natural form and maintain[s] a neat appearance." Snow Maintenance Contract, at 1. Another provision requires Curti's to rake the landscaped beds "smooth so as to maintain a neat appearance." Service Agreement, at 8. Costco makes no argument that an exposed plant root or base — a sight that is observable routinely in nature and in landscaped gardens — makes the appearance of the plant not "neat" as that term is naturally understood. Certainly, there is no evidence in the record that would allow a reasonable jury to make such a finding.

The word "maintain" is used seven times in the 2018 Contract apart from its use in § 1-1.1 — each time in reference to specific acts that Curti's was obligated to perform. See Service Agreement, at 7-8; Snow Maintenance Contract, at 1. Five such acts were raking the landscaped beds; weeding the landscaped beds; pruning, thinning, and trimming trees; mowing grass; and over-seeding and aerating grass. See Service Agreement, at 7-8; Snow Maintenance Contract, at 1. Only two acts involved shrubs or ground cover. See Service Agreement, at 8; Snow Maintenance Contract, at 1. Those two acts were: (1) pruning, thinning, and trimming the shrubs and ground cover; and (2) "remov[ing] winter kill and damage from wind or ice" from evergreen shrubs. See Service Agreement, at 8; Snow Maintenance Contract, at 1. As discussed earlier, uncontradicted testimony from Curti's senior operations manager reflects that neither "pruning," nor "trimming," nor "thinning" involve cutting back the roots or established base of a plant. See Beaudry Tr. 32:7-20. The former two involve shaping or cutting back "new growth" on a plant, and the latter involves removing excessive growth from plants that require additional oxygen. Id.

We view these provisions as providing context and meaning to the "neatly maintained" language appearing in § 1-1.1, which is entitled "Summary of Specifications." Service Agreement, at 7. Indeed, the very title suggests that the provision provides merely a "summary" of other obligations and is not intended to impose any additional obligation. We note that beyond Curti's' pruning, trimming, and thinning obligations, the only provisions that required removal of any plant matter applied exclusively to loose or deceased material. See Snow Maintenance Contract, at 2 (during "Fall Clean Up," Curti's was required to "clean and rake out

beds and lawn areas[,]" "[r]ake leaves, branches[,] and debris[,]" "clean[] out" "bed areas[,]" and "remove[]" "branches, and other debris" from "landscape[d] beds"). [2]

In sum, we find no evidence that would allow a jury to conclude that the "neatly maintain" obligation required that any exposed roots or plant bases be removed. As a result, Curti's did not fail to perform its landscaping obligations under the 2018 Contract with respect to the landscaped bed where Chacko fell, and Chacko's injury did not result from the performance of Curti's contractual duties. The 2018 Contract's indemnity provision therefore does not apply to Chacko's claim. Accordingly, Curti's' motion for summary judgment dismissing Costco's contractual indemnification claim is granted.

B. Costco's Common-Law Indemnification and Contribution Claims

Curti's also seeks summary judgment with respect to Costco's claims for common-law indemnification and contribution. Curti's Mem. at 11.

1. Indemnification

Common-law indemnification, also referred to as "implied indemnity," "is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." McCarthy v. Turner Constr., Inc., 17 N.Y.3d 369, 375 (2011). It is grounded in the "principle that every one is responsible for the consequences of his own negligence, and if another person has been compelled . . . to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him." Raquet v. Braun, 90 N.Y.2d 177, 183 (1997) (alteration in original) (internal quotation omitted); accord Amusement Indus., Inc. v. Stern, 786 F. Supp. 2d 789, 795 (S.D.N.Y. 2011). Thus,

---

[2] We do not find the testimony of the Costco deponent as to Curti's' authority to remove plants or replant, see Costco Mem. at 8-9 (citing Callahan Tr. 59-60), to be relevant given the lack of ambiguity in the contract.

indemnity may be implied "to prevent a result which is regarded as unjust or unsatisfactory" and "is frequently employed in favor of one who is vicariously liable for the tort of another." Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 24 (1985) (internal citation omitted). "In general terms, [implied] indemnity allows a defendant to recover for a loss occasioned solely 'by imputation of law,'" Amusement Indus., 796 F. Supp. 2d at 795 (quoting Mas v. Two Bridges Assocs., 75 N.Y.2d 680, 690 (1990)), "that it would otherwise be forced to bear on its own." Id. (citing Amusement Indus. V. Stern, 693 F. Supp. 2d 301, 307-09 (S.D.N.Y. 2010)).

"To be entitled to common-law indemnification, a party must show (1) that it has been held vicariously liable without proof of any negligence or actual supervision on its part; and (2) that the proposed indemnitor was either negligent or exercised actual supervision or control over the injury-producing work." Naughton v. City of New York, 94 A.D.3d 1, 10 (1st Dep't 2012) (citing McCarthy, 17 N.Y.3d at 377-78 (implied indemnity may be imposed "upon those actively at fault in bringing about the injury" but "a party cannot obtain common-law indemnification unless it has been held to be vicariously liable without proof of any negligence or actual supervision on its own part")). Even if Costco could satisfy the first prong (an issue neither party has raised), its implied indemnity claim fails the second.

Under Naughton's second prong, Costco must be able to show that Curti's "was either negligent or exercised actual supervision or control over the injury-producing work." 94 A.D.3d at 10. Costco makes no argument about supervision or control but instead argues only that a jury could conclude Curti's acted negligently. Costco Mem. at 10-11. Yet, Costco marshals no evidence at all that would allow a jury to find that Curti's acted with negligence. The failure to marshal such evidence by itself requires the granting of Curti's' motion.

Costco argues that there is an issue of fact as to whether Curti's "launched a 'force of harm.'" Id. at 11. While Costco does not cite any case law in this section of its brief, this phrase is apparently a reference to the doctrine articulated in Espinal v. Melville Snow Contractors, 98 N.Y.2d 136 (2002). To give some background, under New York law, "a finding of negligence must be based on the breach of a duty," and thus a "threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." Espinal, 98 N.Y.2d at 138 (citing Darby v. Compagnie Nat'l Air France, 96 N.Y.2d 343, 347 (2001); Palka v. Edelman, 40 N.Y.2d 781, 782 (1976)). It is well-established that "a contractual obligation, standing along, will generally not give rise to tort liability in favor of a third party." Id. (citing Eaves Brooks Costume Co. v. Y.B.H. Realty Corp, 76 N.Y.2d 220, 226 (1990)). Nevertheless, "under some circumstances, a party who enters into a contract thereby assumes a duty of care to certain persons outside the contract." Id. at 139. In Espinal, the New York Court of Appeals defined those circumstances. Specifically, the Espinal court held that "a party who enters into a contract to render services may be said to have assumed a duty of care — and thus be potentially liable in tort — to third persons: (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launche[s] a force or instrument of harm[,]' []Moch [Co. v. Rensselaer Water Co.], 247 N.Y. [160,] 168[ (1928),] (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties[,] []see Eaves Books, 76 N.Y.2d at 226[,] and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely[, ]see Palka[ v. Servicemaster Mgt. Servs. Corp.], 83 N.Y.2d [189,] 589 [(1994)]." Espinal, 98 N.Y.2d at 140. As to the first exception (the only one apparently argued by Costco), Espinal interprets it as requiring that the contracting party "create[] or exacerbate[] a dangerous condition." Id. at 142. To meet this exception, the adverse party must

show that the contractor, "while engaged affirmatively in discharging a contractual obligation, create[d] an unreasonable risk of harm to others, or increase[d] that risk." Church ex rel. Smith v. Callanan Indus., Inc., 99 N.Y.2d 104, 111 (2002) (citation omitted).

Here, however, Costco points to no evidence that Curti's created conditions that caused the juniper to be unreasonably dangerous or that Curti's did anything to exacerbate the risk that the juniper posed. Costco does not even assert that Curti's planted the shrub in question, and based on the record, such a conclusion would necessarily rely on impermissible speculation. See Beaudry Tr. 40-42. Accordingly, Costco has failed to meet its burden of proving that Curti's owed a duty of care to Chacko. This result is consistent with numerous New York cases that refused to find liability when this prong of Espinal was not met. See, e.g., Stiver v. Good & Fair Carting & Moving, Inc., 9 N.Y.3d 253, 257 (2007) (mechanic hired by defendant to inspect vehicle not liable to plaintiff subsequently hit by vehicle because "there [was] no reason to believe that the inspection made [the] vehicle less safe than it was beforehand"); Church, 99 N.Y.2d at 112 (contractor not liable where its failure to install guardrail on highway did not increase the risk that existed before contract was entered into); Foster v. Herbert Slepoy Corp., 76 A.D.3d 210, 215 (2d Dep't 2010) (contractor who plowed snow in driveway but left "some residual snow or ice on the plowed area" and failed "to apply salt or sand to the driveway" did not "render[] the properly less safe that it was before [the contractor] started his work").

As a result, Curti's' motion for summary judgment dismissing Costco's common-law indemnification claim is granted.

2. Contribution

Costco's third-party complaint makes a claim for "contribution" in conjunction with its claim for indemnification. Third Party Comp., at 4. Curti's moved for summary judgment on

this claim, citing case law that explains why there can be no recovery.  See Curti's Mem. at 15.  Costco's opposition brief makes no reference to this argument and we thus deem it unopposed.  The contribution claim is also obviously inapplicable here because such claims require that the party against whom contribution is sought "breached a duty it owed to the injured person." Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 558 (1992).  For the reasons just stated, Curti's owed no duty to Chacko.  Consequently, Curti's' motion for summary judgment dismissing Costco's common-law contribution claim is granted.

### C.  Costco's Breach of Contract Claim

Curti's seeks summary judgment on Costco's claim alleging breach of contract because Curti's failed to comply with the Service Agreement insofar as it required Curti's to obtain the specific insurance coverage required and to name Costco as an additional insured.  See Third-Party Comp. ¶¶ 25-29.

To support its summary judgment motion, Curti's asserted in its brief that it obtained the requisite coverage, see Curti's Mem. at 15, and also provided a copy of a certificate of insurance which names Costco as an additional insured, see Certificate of Liability Insurance.  Costco's only basis for avoiding summary judgment is to assert that, "under New York law, a certificate of insurance is merely evidence of a contract rather than conclusive proof that coverage was procured."  Costco Mem. at 10.  Costco cites to New York cases that hold that a certificate of insurance is not "conclusive proof" of insurance coverage.  Id. (citing Prevost v. One City Block LLC, 155 A.D.3d 531, 536 (1st Dep't 2017); Horn Maint. Corp. v. Aetna Cas. & Sur. Co., 225 A.D.2d 443, 444 (1st Dep't 1996)).  Costco's assertion, however, is insufficient avoid summary judgment.

The Court accepts that a certificate of insurance is not "conclusive" proof of the requisite coverage.  But the burden to show breach of the contractual requirement at issue rests with

Costco, not Curti's.  See Raymond, 1997 WL 34598, at *1.  Thus, on summary judgment, it is Costco's burden to show that Curti's failed to procure the particular insurance required by the 2018 Contract.  Where, as here, the moving party (Curti's) does not bear the burden of proof on a claim, its burden on a motion for summary judgment "may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case"  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex, 477 U.S. at 323 (emphasis in original).

In its moving papers, Curti's pointed to the absence of evidence by asserting that the proper coverage had been obtained.  See Curti's Mem. at 15.  As the Second Circuit has noted, when the moving party points out the absence of evidence to support the nonmoving party's claim, "the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial."  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (internal quotation omitted); accord El-Nahal, 835 F.3d at 252, 256.  While one might imagine evidence that Costco could have adduced to support its breach of contract claim — for example, a sworn statement or deposition testimony from the insurance company denying that

proper coverage had been procured or a response from Curti's to a request for admission that the proper coverage had not been obtained — Costco in fact cites to no evidence whatsoever on this point, let alone evidence that would allow a reasonable jury to make the factual finding that Curti's failed to procure proper insurance.  See Costco Mem. at 10; Costco 56.1 Statement at *10.[3]  As a result, Curti's is entitled to summary judgment dismissing Costco's breach of contract claim.

IV.  CONCLUSION

Curti's' motion for summary judgment dismissing all of Costco's third-party claims (Docket # 53) is granted.

SO ORDERED.

Dated: October 22, 2021
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[3] "*__" designates pagination assigned by the ECF system.